Opinion by Judge BYBEE; Dissent by Judge GWIN.
OPINION
BYBEE, Circuit Judge:
Plaintiff-Appellant Barnum Timber Company (“Barnum”) owns and operates nonindustrial timberlands and rangelands in Northern California, including land in the Redwood Creek watershed. It appeals the district court’s dismissal of its action against the DefendanU-Appellees, the U.S. Environmental Protection Agency (“EPA”). Barnum brought suit in district court under the Administrative Procedure Act (“APA”) to challenge EPA’s decision to retain the Redwood Creek as an impaired water body under § 303(d) of the Clean Water Act (“CWA”). The district court dismissed Barnum’s suit for lack of Article III standing but granted leave to file an amended complaint. Barnum moved to amend the complaint, but the district court denied the motion for failure to remedy the standing deficiency and entered judgment dismissing the case. Barnum appeals.
We conclude that Barnum’s amended complaint demonstrated that Barnum has standing as a landowner whose property values are adversely impacted to challenge EPA’s retention of Redwood Creek as a § 303(d) impaired water body. Aceording *896 ly, we reverse the judgment of the district court and remand the case for further proceedings.
I. BACKGROUND
Plaintiff-Appellant Barnum Timber Company (“Barnum”) is a California limited partnership that owns property and conducts timber-harvesting operations in the Redwood Creek watershed near Eureka, California. Section 303(d) of the CWA, 33 U.S.C. § 1313(d), is part of what we termed “the Act’s carrot-and-stick approach to attaining acceptable water quality without direct federal regulation of non-point sources of pollution.” Pronsolino v. Nastri, 291 F.3d 1123, 1127 (9th Cir.2002). The CWA requires that each state identify bodies of water within its boundaries that are impaired by effluent (§ 303(d)(1)(A)) or thermal (§ 303(d)(1)(B)) pollution and then periodically submit a list of the impaired water bodies to EPA for approval. CWA § 303(d)(2), 33 U.S.C. § 1313(d)(2). Once EPA has approved a state’s list, the state and EPA must develop maximum pollution levels for the impaired water bodies called “total maximum daily loads” (TMDL). 33 U.S.C. § 1313(d)(1)(C). Under the CWA, the state must create a plan to bring the impaired water bodies into compliance with the TMDLs. Id. As we have previously made clear, “[t]he states are required to set water quality standards for all waters within their boundaries regardless of the sources of the pollution entering the waters. If a state does not set water quality standards, or if the EPA determines that the state’s standards do not meet the requirements of the [CWA], the EPA promulgates standards for those states.” Id. at 1127.[1] In the State of California, any water bodies included on the § 303(d) list are also subject to state regulations. Cal. Code Regs. tit. 14, § 898.
Redwood Creek was first placed on California’s § 303(d) list in 1992. It has remained on the list since that time. In 2006, California reevaluated its § 303(d) list, as it is required by statute to do periodically, 33 U.S.C. § 1313(d)(2), and submitted it to EPA for approval, with Redwood Creek listed as being impaired by both sediment and temperature. EPA approved the list, including the Redwood Creek’s listing as an impaired water body. See 72 Fed.Reg. 12175 (2007).
Barnum sued EPA in federal district court, challenging EPA’s decision to “retain Redwood Creek on the Section 303(d) list of impaired water bodies” as arbitrary and capricious. See 5 U.S.C. § 706(2)(A). Barnum claimed two bases for its injury; First, it argued that, as a consequence of EPA’s decision, it had “suffered extra costs to satisfy land use restrictions” triggered by the Redwood Creek’s § 303(d) listing, and second, that it “has seen its property values decrease.”
EPA moved for dismissal for lack of constitutional standing. The district court granted that motion without prejudice for leave to amend the complaint. The district court found that Barnum’s *897 first complaint “offered only conclusory and nonspecific claims of injury” and failed to establish that their alleged injuries “were caused by or are in any way connected to the EPA’s 2006 approval of California’s listing of Redwood Creek.” Specifically, the district court found that Barnum had “identifie[d] no connection between the state regulation causing its injury and the EPA’s Section 303(d) action” and that Barnum had “offer[ed] nothing to support” its assertion of reduced property values, “other than the bare allegation itself.”
Barnum moved to file an amended complaint and attached declarations by Thomas M. Herman and James M. Able, California forestry experts, who explained that the property value of Barnum’s land had decreased because of the Redwood Creek’s § 303(d) listing. But the district court denied Barnum’s motion because “the proposed amendment would not cure the standing problem,” dismissed the action, and entered final judgment against Barnum. Barnum here appeals.[2]
II. STANDING
The district court’s decisions to dismiss Barnum’s initial complaint, to dismiss Barnum’s motion to file an amended complaint, and to enter judgment dismissing Barnum’s case all center on a single question: Does Barnum have standing to challenge EPA’s retention of Redwood Creek as a CWA § 303(d) impaired water body? Specifically at issue here is whether Barnum’s amended complaint meets the constitutional requirements for standing.[3]
Article III of the U.S. Constitution confines federal courts to hearing only “cases” and “controversies.” Standing is a core component of the Article III case or controversy requirement. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To establish constitutional standing, plaintiffs must demonstrate three elements, which constitute the “irreducible ... minimum” of Article III standing, id. at 560, 112 S.Ct. 2130: (1) injury-in-fact — plaintiff must allege “concrete and particularized” and “actual or imminent” harm to a legally protected interest, id. at 560-61, 112 S.Ct. 2130; (2) causal connection — the injury must be “fairly traceable” to the conduct complained of, Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); and (3) redressability—a favorable decision must be “likely” to redress the injury-in-fact, Lujan v. Defenders of Wildlife, 504 U.S. at 560-61, 112 S.Ct. 2130. We will discuss each element in turn.
A. Injury-inr-Fact
We begin our analysis with the first element of constitutional standing: injury-in-fact. We acknowledge injury-in-fact was not raised as an issue for appeal: the district court found EPA had conceded the existence of Barnum’s injury-in-fact, and neither party argued the existence of inju *898 ry-in-fact in their briefs on appeal. But because “standing is a necessary element of federal-court jurisdiction,” Thomas v. Mundell, 572 F.3d 756, 760 (9th Cir.2009), we must ensure Barnum has met all the requirements of constitutional standing. Understanding Barnum’s injury will help frame the remaining issues as well.
Barnum alleges as its injury-in-fact that it suffered a reduction in the economic value of its property in the Redwood Creek watershed. A specific, concrete, and particularized allegation of a reduction in the value of property owned by the plaintiff is sufficient to demonstrate injury-in-fact at the pleading stage. See Lujan, 504 U.S. at 560, 112 S.Ct. 2130. In this case, Barnum has submitted two declarations by forestry experts, testifying to the property value reductions. Certainly the Supreme Court has been satisfied by less. In Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), for example, the Court found that a complaint including a request for “damages for the temporary taking of [the plaintiffs] property” was sufficient to establish injury-in-fact at the pleading stage. Id. at 1014 n. 3, 112 S.Ct. 2886. Thus we hold Barnum has met its burden of demonstrating injury-in-fact.
Unlike injury-in-fact, the remaining two elements of constitutional standing are disputed in this appeal: causal connection, that is whether Barnum’s alleged injuries are fairly traceable to EPA’s decision to retain Redwood Creek as an impaired water body under CWA § 303(d); and redressability, whether a favorable judgment for Barnum in its case against EPA would resolve or ameliorate Barnum’s alleged injury-in-fact.
B. Causal Connection
Barnum argues that its Redwood Creek property value reduction is causally connected to EPA’s retention of Redwood Creek as an impaired water body in “two distinct and individually adequate” ways: (1) “the Section 303(d) listing has reduced the value of Barnum’s property by feeding the public’s and the market’s perception that Barnum’s timber operations are restricted by the listing”; and (2) “the Section 303(d) listing has reduced the value of Barnum’s property by triggering the application of Section 898 of the Forest Practice Rules.” See Cal. Code Regs. tit. 14, § 898. Because we credit Barnum’s first argument (i.e., the effect of EPA’s action on the market) and hold that Barnum has established a causal connection between its injury-in-fact and EPA’s actions, we do not address Barnum’s second causal connection argument.
Barnum’s amended complaint asserted that “Barnum’s property in the Redwood Creek watershed has lost value simply because of the inclusion of Redwood Creek on the § 303(d) list as impaired by sediment and by temperature.” As evidence of this, Barnum submitted two declarations by California Registered Professional Foresters, each testifying that “[t]he United States Environmental Protection Agency’s listing of Redwood Creek as an impaired water body under the CWA has significantly reduced the value of Barnum’s timberlands in the Redwood Creek watershed.” (Declaration of Thomas M. Herman, an attorney, licensed professional forester, and Former Director and President of the California Licensed Foresters Association; Declaration of James L. Able, a forestry consultant and licensed professional forester.) Herman’s declaration explains that public perception is the basis for Barnum’s belief that EPA’s listing is causally connected to the reduction in Barnum’s Redwood Creek watershed property value: “The public has ready access to the Section 303(d) listings, including the listing *899 of Redwood Creek. When a listing occurs, the public perceives — whether accurately or not — that the subject property will be subject to additional and onerous regulation .... In this case, the market reaction is such as to deem Barnum’s property to be devalued because of the § 308(d) listing.”
Barnum’s amended complaint, including the two declarations, is more than sufficient to support the causal connection element of Article III standing at this early stage of the proceeding. As the Supreme Court has noted, the evidence necessary to support standing may increase as the litigation progresses: “Since they are not mere pleading requirements but rather an indispensable part of the plaintiffs case, each [constitutional standing] element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, ie., with the manner and degree of evidence required at the successive stages of the litigation.” Lujan v. Defenders of Wildlife, 504 U.S. at 561, 112 S.Ct. 2130 (1992); see also Lucas, 505 U.S. at 1014 n. 3, 112 S.Ct. 2886 (“Lujan, since it involved the establishment of injury in fact at the summary judgment stage, required specific facts to be adduced by sworn testimony; had the same challenge to a generalized allegation of injury in fact been made at the pleading stage, it would have been unsuccessful.”). Here, where Barnum has alleged specific facts plausibly explaining causality and supported by competent declarations, Barnum has more than met its burden to demonstrate the causal connection element of Article III standing at the pleading stage.
C. Redressability
Determining redressability “requires an analysis of whether the court has the power to right or to prevent the claimed injury.” Gonzales v. Gorsuch, 688 F.2d 1263, 1267 (9th Cir.1982). In this case, if Barnum were successful in showing that EPA’s listing of Redwood Creek was arbitrary or capricious, the district court has the power under the APA to grant the declaratory judgment and injunctive relief Barnum requests, which remedies would result in Redwood Creek being removed from the § 303(d) impaired water bodies list. 5 U.S.C. § 706(2)(A); see Nw. Envtl. Def. Ctr. v. Bonneville Power Admin., 477 F.3d 668, 679-80 (9th Cir.2007) (holding that the plaintiff met the redressability requirement of constitutional standing to challenge agency action under the APA because “all the inherent equitable powers of the District Court are available for the proper and complete exercise of its jurisdiction”) (citation and alteration omitted). And, for reasons explained in the previous section, such removal will resolve the injury Barnum has allegedly experienced from its property’s proximity to a § 303(d) impaired water body. Thus, if Barnum is successful on the merits at the district court, it is not “merely speculative ... that the injury will be redressed.” Tyler v. Cuomo, 236 F.3d 1124, 1133 (9th Cir.2000) (internal citation omitted).
The district court relied primarily on our opinion in San Diego County Gun Rights Committee v. Reno, 98 F.3d 1121 (9th Cir.1996), but we think that case is distinguishable. In San Diego County, Appellant-Plaintiffs were two associations and three individuals, each of whom attempted to claim injuries resulting from passage of the Crime Control Act, a federal law that amended the Gun Control Act of 1968 to prohibit “the manufacture, transfer or possession of semiautomatic assault weapons and the transfer or possession of large capacity ammunition feeding devices.” San Diego Cty., 98 F.3d at 1124 (internal quotation marks removed). The plaintiffs had argued that the Crime Control Act’s bans on certain weapons had caused the *900 price of those banned and grandfathered devices to increase, “thus hindering [the plaintiffs’] ability to exercise their constitutional rights” to buy guns. Id. at 1130. Referring generally to the viability of an economic injury as a claim for injury-in-fact, we acknowledged that “[e]conomic injury is clearly a sufficient basis for standing.” Id. But we noted that in the case at hand, the plaintiffs’ economic injury claim nevertheless “fail[ed] the second prong of the Lujan test” — causal connection. Id.
The San Diego County plaintiffs had failed to demonstrate the causal connection element of constitutional standing on economic injury grounds because they provided no evidence attesting that the federal government’s actions actually did cause an increase in the prices, id. (“In California, the Roberti-Roos Assault Weapons Control Act [a state law] ... also bans the manufacture, sale, and distribution of certain delineated assault weapons. Thus, any finding that the Crime Control Act had a significant impact on the increase of prices of weapons would be tantamount to sheer speculation.”), nor could we find that the challenged law required an increase in the prices, id. (“Although the Crime Control Act may tend to restrict supply, nothing in the Act directs manufacturers or dealers to raise the price of regulated weapons”).
The district court concluded that the failings of the plaintiffs’ case in San Diego were the failings of Barnum’s case— “where injury is alleged to occur within a market context, the concepts of causation and redressability become particularly nebulous and subject to contradictory, and frequently unprovable, analyses.” Id. (quoting Common Cause v. Dep’t of Energy, 702 F.2d 245, 251 (D.C.Cir.1983)). Barnum’s complaint presents no such defects here.
First, Barnum provided two declarations as evidence that the challenged government action — EPA’s listing of Redwood Creek as a § 303(d) impaired water body — has in fact caused its property value to decrease. In San Diego County, the plaintiffs contested government action that affected entire markets and correspondingly alleged price increases to the market as a whole, in which they merely hoped to be buyers. Id. In contrast, Barnum’s allegation that the economic value of its property has been affected by the government action on an adjoining waterway leaves open the possibility Barnum could isolate the effects of the government action on its property.
Second, Barnum’s claim to diminished value does not depend on the unpredictable actions of third parties.[4] The Herman and Able declarations offer a commonsense assessment of the market for real property — in general, regulatory restrictions on one property that affect the uses to which a second property can be put will lower the second property’s value.[5] *901 The dissent’s claim that “a general averment that conduct may decrease property value is not sufficient where that harm is not yet concrete and remains speculative,” Dissent at 905, is simply inconsistent with the cases. See, e.g., Friends of the Earth, Inc. v. Laidlaw Environmental Services, 528 U.S. 167, 183-84, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (determining a plaintiffs declaration that “her home, which [i]s near [defendant’s facility, had a lower value than similar homes located farther from the facility, and that she believed the pollutant discharges accounted for some of the discrepancy” was an “affidavit[ ] and testimony presented” properly supporting the plaintiffs claim that the challenged action had “directly affected [her] ... economic interests”); Clinton v. City of N.Y., 524 U.S. 417, 433, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) (“The Court routinely recognizes probable economic injury resulting from governmental actions that alter competitive conditions as sufficient to satisfy the Article III ‘injury-in-fact’ requirement. ... It follows logically that any ... petitioner who is likely to suffer economic injury as a result of governmental action that changes market conditions satisfies this part of the standing test”) (citation and alterations omitted); see also 3 Richard J. Pierce, Administrative Law Treatise § 16.4 at 1125 (4th ed. 2002) (“Many cases confer standing on consumers injured by an agency action that is likely to yield higher prices, on employers whose jobs or wage levels are jeopardized by an agency action that is likely to have an adverse effect on their employers’ revenues, or on any other individual or group that is likely to suffer an adverse economic effect as a result of an agency action.”). Here, EPA’s action will lead to the imposition of regulatory restrictions on Redwood Creek, and Barnum has alleged that its property will be affected and that its property will decrease in value as a consequence. Where a successful challenge to EPA’s action could reduce or eliminate those regulatory restrictions, causation and redressability are satisfied.
We do not think Barnum must allege that EPA is the sole source of the devaluation of its property. The dissent’s claim that “the listing by the EPA is one factor, among many, that might affect the value of its property” may well be correct, Dissent at 908, but we think the point is irrelevant to whether Barnum has standing to challenge EPA’s action. Barnum has alleged that at least EPA’s listing of Redwood Creek has affected the value of its property. It need not eliminate any other contributing .causes to establish its standing. See Ocean Advocates v. U.S. Army Corps of Engineers, 402 F.3d 846, 860 (9th Cir.2005) (finding the injury fairly traceable to the defendant, even though “other factors may also cause” the injury, because “the link between the [challenged action] and [the alleged injury] is not tenuous or abstract”).
III. CONCLUSION
Because Barnum has sufficiently demonstrated its injury-in-fact, the causal connection between the alleged injury and the Appellee-Defendant, and the redressability of its claim should it be successful on the merits, Barnum has met the requirements of Article III standing. We con- *902 elude that the district court erred in denying the motion to amend. We vacate the district court’s entry of judgment, reverse the district court’s denial of Barnum’s motion to amend its complaint, and remand for further proceedings.
REVERSED AND REMANDED.

. The dissent has mischaracterized the relationship between the states and EPA. See Dissent at 903 ("it is the state that chooses if and how to implement a nonpoint source of a TMDL”); 903 ("the majority opinion incorrectly suggests that the EPA, and not California, controls nonpoint water standards”). As we have pointed out, the state has the initial responsibility to set water standards, but EPA may step in if the state fails to promulgate standards entirely or fails to set appropriate standards. See 33 U.S.C. § 1313(b)(1) (authorizing EPA to set water quality standards for a state), (c)(3)-(4) (similar); Pronsolino, 291 F.3d at 1129 (noting that EPA disapproved California’s 1992 list and added seventeen water segments to a new § 303 list), 1140 ("Congress definitely requires that the states or the EPA establish TMDLs for all pollutants in waters in § 303(d)(1) lists”).

. Because standing is a question of law, we review the district court’s determination de novo. See San Diego Cnty. Gun Rights Comm. v. Reno, 98 F.3d 1121, 1124 (9th Cir.1996) (stating that standing is a question of law to be reviewed de novo); Smith v. Pac. Props, and Dev. Corp., 358 F.3d 1097, 1100 (9th Cir.2004) ("Whether ... a denial [of leave to amend] rests on an inaccurate view of the law and is therefore an abuse of discretion requires us to review the underlying legal determination de novo.” (internal citations omitted)).

. Because we find that Barnum’s claim that the inclusion of Redwood Creek on the § 303 list caused its property values to diminish, we do not reach Barnum's second ground, that its property values diminished because the § 303 listing triggers additional California regulations that impose additional costs on Barnum’s use of its property.

. The dissent’s repeated concern that it is California's regulations that have caused Barnum’s alleged injuries misunderstands our opinion. See Dissent at 908-09. Whether Barnum might have a cause of action against California does not affect whether Barnum has standing to sue EPA, just as whether Barnum will be successful on the merits in its suit against EPA does not affect whether Barnum has standing to pursue such a suit. At present, we are only concerned with whether Barnum's amended complaint has met the preliminary requirements to pursue its challenge against EPA in federal court. The questions of whether Barnum will win, or will be able to demonstrate standing later at the summary judgment stage, or would be able to sue California in a similar action are not before us.
We note that much of the dissent addresses Barnum's second ground for standing, which we have declined to address. See supra n. 3.

. The dissent criticizes the declarations as "lack[ing] any sufficient foundation” and *901 "[wjithout any described polling regarding public perceptions and without any described experience in property appraisals.” Dissent at 904 n.2. Barnum first included the declarations in its amended complaint, likely to try to satisfy the district court, although nothing in the federal rules requires such declarations to support allegations in a complaint. The dissent’s criticism seems out of place at this stage of the proceedings and would be better reserved for the merits.