**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BERNARDO MENDIA,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>JOHN M. GARCIA; U.S. DEPARTMENT OF HOMELAND SECURITY; CHING CHANG,<br>*Defendants-Appellees*. | No. 12-16220<br><br>D.C. No.<br>3:10-cv-03910-MEJ<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Maria-Elena James, Magistrate Judge, Presiding

Argued and Submitted
April 8, 2014—San Francisco, California

Filed September 29, 2014

Before: John T. Noonan, Jacqueline H. Nguyen,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Watford

# SUMMARY[*]

## Civil Rights

The panel reversed the district court's dismissal, for lack of standing, and remanded in an action brought against two agents of the United States Immigration and Customs Enforcement seeking damages for the time plaintiff spent in pre-trial detention on state criminal charges allegedly as a result of the agents wrongfully lodging an immigration detainer against him even though he was United States citizen.

The panel held that plaintiff adequately pled causation for Article III purposes because he sufficiently alleged that his inability to utilize the services of a bail bondsman caused him to remain in pre-trial detention unnecessarily, at least during the period in which the bail condition remained in effect. The panel determined that plaintiff plausibly alleged that the immigration detainer was at least a substantial factor motivating the bail bondsmen's refusal to do business with him.

## COUNSEL

Purvi G. Patel (argued), Benjamin J. Fox, and Michael T. Baldock, Morrison & Foerster LLP, Los Angeles, California, for Plaintiff-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Lana L. Vahab (argued), Trial Attorney; Stuart F. Delery, Acting Assistant Attorney General; and Colin A. Kisor, Deputy Director, United States Department of Justice, Civil Division, Washington, D.C., for Defendants-Appellees.

**OPINION**

WATFORD, Circuit Judge:

Bernardo Mendia sued two agents of the United States Immigration and Customs Enforcement (ICE), seeking damages for the time he spent in pre-trial detention on state criminal charges allegedly as a result of the agents' wrongful acts. The district court granted the government's motion to dismiss Mendia's lawsuit on the ground that he lacks Article III standing to pursue his claims. We conclude that Mendia's standing allegations are adequate to survive a motion to dismiss.

According to Mendia's *pro se* complaint, the State of California arrested him in May 2007 and charged him with "various alleged financial crimes." A state court granted Mendia bail, but he lacked the means to post it without the assistance of a bail bondsman. In June 2007, before Mendia could post the required bail, the defendant ICE agents interviewed him at the county jail. Mendia told them he is a United States citizen. To back that assertion up, he gave the agents his Social Security number and informed them he had a valid United States passport. Mendia then invoked his Fifth Amendment right to remain silent, directing the agents to contact his lawyer at the county Public Defender's office if they had additional questions or wanted to verify the information he had given them. One of the agents became

irate, stating something to the effect of, "Oh! You don't want to talk to me? We'll see if you want to talk when we're deporting your ass!"

The ICE agents lodged an immigration detainer against Mendia that same day. The purpose of such detainers is to notify other law enforcement agencies that the Department of Homeland Security "seeks custody of an alien . . . for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). Mendia's detainer stated that he was an alien of Mexican nationality and that ICE had initiated an investigation to determine whether he was subject to removal from the United States. Mendia alleges that the agents issued the detainer with malice, knowing or in reckless disregard of the fact that he is a United States citizen not subject to removal.

According to Mendia's complaint, the immigration detainer precluded him from securing pre-trial release. When Mendia contacted various bail bondsmen for assistance in posting bail, all of them "refused to even consider posting a bail for the Plaintiff because of the immigration detainer." The bail bondsmen told Mendia that "no bail bond would be afforded to the Plaintiff on account of the fact that there was an immigration detainer placed on the Plaintiff." Mendia alleges that, but for the immigration detainer, he would have posted bail with the assistance of a bail bondsman, as he had been able to do following prior arrests.

Approximately six months after lodging the detainer against Mendia, the ICE agents cancelled it, although Mendia alleges he didn't learn of that fact until much later. In the interim, on an unspecified date, the state court removed the bail condition and granted Mendia release on his own

recognizance. Mendia alleges that, because he believed the immigration detainer was still in place, he refused to accept release, even though he no longer needed the assistance of a bail bondsman to get out. Mendia's explanation is that he feared ICE agents would re-arrest and deport him, thereby jeopardizing his defense of the pending state criminal charges. (He doesn't explain why he apparently lacked that fear when attempting to engage the services of a bail bondsman earlier.) Mendia alleges that he accepted release on his own recognizance in July 2009, after finally learning that the detainer had been cancelled.

Mendia sued the ICE agents under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the Federal Tort Claims Act, 28 U.S.C. § 1346(b), asserting various constitutional and common-law tort claims. The government moved to dismiss the action under Federal Rule of Civil Procedure 12(b)(1), arguing that, on their face, Mendia's allegations don't establish Article III standing. The district court dismissed the action on that basis, and therefore did not address the government's alternative motion to dismiss under Rule 12(b)(6) for failure to state a claim.

Of the three elements required to establish Article III standing—injury, causation, and redressability—injury and redressability are easily met here. If we take Mendia's well-pleaded allegations as true, as we must on this facial attack, *see Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014), he spent two years in pre-trial detention that he should not have endured. He thus claims as his injury loss of liberty, which satisfies Article III because it's "an injury that affects him in a 'personal and individual way.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)). In fact,

it's difficult to imagine an injury that could affect one more personally and individually than a deprivation of one's liberty. That's presumably why no one questions the existence of Article III injury when a civil rights plaintiff sues on the theory that the actions of the defendants (say, the police) resulted in wrongful confinement on criminal charges, whether before or after trial. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384 (2007); *Tatum v. Moody*, — F.3d —, 2014 WL 4627967 (9th Cir. Sept. 17, 2014). And it's clear that the relief Mendia seeks—an award of monetary damages—would redress the injury he has alleged.

The ICE agents argued, and the district court concluded, that Mendia could not have suffered Article III injury because ICE never took him into custody. Whether ICE had custody has some bearing on the element of causation, to which we will turn in a moment, but it has no bearing on the element of injury. Remaining confined in jail when one should otherwise be free is an Article III injury, plain and simple; who or what caused that injury is of course a separate question. The case on which the district court relied, *Garcia v. Taylor*, 40 F.3d 299 (9th Cir. 1994), doesn't apply here. We held there that a prisoner already serving a sentence on federal criminal charges could not use the habeas corpus statute to challenge an immigration detainer lodged against him. *Id.* at 303. The detainer did not place the prisoner in "custody" for purposes of habeas jurisdiction, we concluded, because a detainer standing alone does not restrain liberty. *Id.* Even if *Garcia* applies outside the habeas context, it's not on point because Mendia does not allege injury on the theory that the detainer independently restrained him.

The question that remains is whether Mendia has adequately alleged causation, which for Article III purposes

requires a showing that his injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

It's true, as just noted, that ICE never had custody of Mendia, and he therefore cannot allege that the ICE detainer directly caused his confinement. But the fact that "the harm to [the plaintiff] may have resulted indirectly does not in itself preclude standing." *Warth v. Seldin*, 422 U.S. 490, 504 (1975). Causation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury, and there's no requirement that the defendant's conduct comprise the last link in the chain. *Bennett*, 520 U.S. at 168–69. As we've said before, "what matters is not the 'length of the chain of causation,' but rather the 'plausibility of the links that comprise the chain.'" *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002) (quoting *Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984)).

Mendia relies on a causal chain with multiple links—the state court's decision to impose bail, his inability to post bail without the assistance of a bail bondsman, the ICE agents' imposition of the immigration detainer, and finally the bail bondsmen's refusal to do business with him. The last link in the chain is the critical one for our purposes. Mendia alleges that the bail bondsmen's refusal to do business with him is attributable to the immigration detainer lodged against him. Mendia's causation theory is that the government's unlawful conduct, while not directly causing his injury, nonetheless led third parties to act in a way that injured him.

That is a perfectly viable theory. *See Lujan*, 504 U.S. at 562. But when a plaintiff alleges that government action caused injury by influencing the conduct of third parties, we've held that "more particular facts are needed to show standing." *Nat'l Audubon Soc'y*, 307 F.3d at 849. That's so because the third parties may well have engaged in their injury-inflicting actions even in the absence of the government's challenged conduct. *Americans for Safe Access v. DEA*, 706 F.3d 438, 448 (D.C. Cir. 2013). To plausibly allege that the injury was "not the result of the *independent* action of some third party,*" Bennett*, 520 U.S. at 167 (emphasis added), the plaintiff must offer facts showing that the government's unlawful conduct "is at least a substantial factor motivating the third parties' actions." *Tozzi v. U.S. Dep't of Health & Human Servs.*, 271 F.3d 301, 308 (D.C. Cir. 2001) (internal quotation marks omitted); *accord San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163, 1171 (9th Cir. 2011). So long as the plaintiff can make that showing without relying on "speculation" or "guesswork" about the third parties' motivations, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 (2013), she has adequately alleged Article III causation.

When we apply these principles here, we have little difficulty concluding that Mendia's allegations are adequate. None of the links in Mendia's causal chain relies on speculation or guesswork. For example, we aren't left to speculate whether the bail bondsmen's refusal to do business with Mendia left him unable to post bail. He specifically alleges that he needed the assistance of a bail bondsman to post the required bail and that he unsuccessfully tried to secure such assistance. Those allegations are plausible in light of the fact that, according to Mendia's complaint, he never did post bail. Instead, he spent two years in pre-trial

detention, obtaining release only after the state court eliminated the bail condition. Mendia has adequately alleged that his inability to utilize the services of a bail bondsman caused him to remain in pre-trial detention unnecessarily, at least during the period in which the bail condition remained in effect.[1]

Nor are we left to speculate as to *why* Mendia was unable to utilize the services of a bail bondsman. Mendia's complaint expressly alleges that every bail bondsman he contacted told him why: "because of the immigration detainer." This is not a case in which the existence of a cause-and-effect relationship between the government's allegedly unlawful conduct and the third parties' injury-inflicting actions is "purely speculative." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976). Indeed, it's unclear how Mendia could have alleged the causal connection between the detainer and the actions of the bail bondsmen any more concretely. His complaint relies on words directly from

---

[1] As noted earlier, Mendia alleges that after the state court granted him release on his own recognizance, he refused to accept it because he feared ICE would re-arrest and then deport him, thereby prejudicing his defense of the pending state criminal charges. Mendia lacks standing to seek damages for any period of pre-trial detention he suffered after the state court granted him release on his own recognizance. Given that he *chose* to remain in state custody rather than accept release, his injury can't be deemed fairly traceable to the actions of the ICE agents unless it was reasonably incurred "to mitigate or avoid" the future harm he claimed to fear. *Clapper*, 133 S. Ct. at 1151 n.5. But to establish standing to seek redress for this injury, Mendia must be able to allege a "substantial risk" that the future harm would occur, *id.*, and here he can't. His alleged fear that if he left state custody ICE would somehow manage to seize and deport him, notwithstanding his status as a U.S. citizen, is entirely speculative. The loss of liberty he experienced after being granted release on his own recognizance is thus a self-inflicted injury. *See id.* at 1151–52.

the mouths of the relevant third parties explaining why they took the actions that caused Mendia's injury.

Contrary to the ICE agents' argument, Mendia's causation theory—that the detainer led the bail bondsmen to refuse to do business with him—isn't facially implausible. When ICE announces that it "seeks custody of an alien . . . for the purpose of arresting and removing the alien," 8 C.F.R. § 287.7(a), there's certainly a higher risk that, if released on bail from state custody, the alien might not be around to make his court dates. *See State v. Fajardo-Santos*, 973 A.2d 933, 934 (N.J. 2009) (lodging of detainer increased risk of non-appearance at trial, warranting increase in defendant's bail). Whether that heightened risk was enough to lead bail bondsmen to refuse Mendia's business altogether, rather than simply to demand an increased fee, strikes us as the sort of factual issue that can't be resolved in the context of a facial attack on the sufficiency of a complaint's allegations.

Mendia's causation allegations do not rely on speculation or guesswork any more than those we upheld as sufficient in *Barnum Timber Co. v. EPA*, 633 F.3d 894 (9th Cir. 2011). There, the Environmental Protection Agency designated a stream running through the plaintiff's timber lands as an "impaired" water body under the Clean Water Act. *Id.* at 895–96. The plaintiff's injury consisted of the decrease in the value of its property, which it alleged was caused by the EPA's impairment listing. *Id.* at 896. The plaintiff supported its causation allegation with an affidavit from a licensed professional forester, who explained that "'[w]hen a listing occurs, the public perceives—whether accurately or not—that the subject property will be subject to additional and onerous regulation.'" *Id.* at 899. The forester opined that "'the market reaction is such as to deem Barnum's property to be

devalued because of the § 303(d) listing.'" *Id.* We held that "Barnum has alleged specific facts plausibly explaining causality," rejecting the government's factual attack on the complaint's allegations. *Id.* If anything, Mendia's causation allegations are even less speculative than those in *Barnum Timber*, because rather than relying on an expert's opinion about "the market reaction" to the government's challenged conduct, Mendia included allegations straight from the relevant third parties' mouths stating that they declined to do business with Mendia "because of" the immigration detainer.

The ICE agents contend this case is more analogous to *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121 (9th Cir. 1996), than to *Barnum Timber*. We don't share their view. The plaintiffs in *San Diego County* were prospective purchasers of certain weapons banned by the Crime Control Act of 1994. *Id.* at 1124. They sought to challenge the constitutionality of the Act and predicated Article III standing on the bare allegation—bereft of any supporting facts—that prices for the banned weapons had increased by 40 to 100 percent as a direct result of the Act. *Id.* at 1130. We held that the plaintiffs' allegation of a causal connection between the increase in prices and the Crime Control Act rested on "sheer speculation." *Id.* We pointed out that the higher prices were imposed by third-party gun dealers and manufacturers, not by the Crime Control Act itself, and that an obvious alternative explanation appeared to exist for the increase in prices: California had enacted its own ban of the same types of weapons covered by the federal Act. *Id.* In those circumstances, the plaintiffs were required to allege "more particular facts" to substantiate their theory of causation, *see Nat'l Audubon Soc'y*, 307 F.3d at 849, but they alleged no facts at all. Here, in contrast, Mendia's chain of causation does not rest on speculation, and he has

supported each link in the chain with specific factual allegations.

We must reject the ICE agents' remaining arguments. They assert that the immigration detainer can't support causation because ICE didn't "control" the actions of the bail bondsmen. That's not the relevant test. While such "control" would certainly suffice to establish causation, *see Bennett*, 520 U.S. at 169, it's not a requirement. What Mendia needed to allege is that the immigration detainer was at least a substantial factor motivating the bail bondsmen's refusal to do business with him, *see Tozzi*, 271 F.3d at 308, and he's done that. The ICE agents also assert that Mendia's indigency—not the imposition of the detainer—was the real reason he couldn't utilize the services of a bail bondsman. That, too, is a factual dispute that can't be resolved in the context of a facial attack on the sufficiency of the complaint's allegations. Its resolution, if necessary, must be left for later stages of the litigation.

We reverse the district court's dismissal of Mendia's complaint and remand for further proceedings. The parties' requests for judicial notice are GRANTED. Defendants' motion to supplement the record is DENIED.

**REVERSED AND REMANDED.**