**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PATRICK NOVAK; DANIEL ROCHA; LARRY KENNER, DBA Kenner, Inc., a Hawaii corporation; KEN SCHOOLLAND; BJORN ARNTZEN; PHILIP R. WILKERSON; WILLIAM AKINA, PH.D., Individually and as Representatives of a Class of Similarly Situated Persons,
            *Plaintiffs-Appellants*,

                    v.

UNITED STATES OF AMERICA; DOES 1–1000,
            *Defendants-Appellees*.

No. 13-16383

D.C. No.
1:12-cv-00638-
LEK-RLP

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted
February 19, 2015—Honolulu, Hawaii

Filed July 30, 2015

Before: Richard R. Clifton, N. Randy Smith,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Clifton;
Concurrence by Judge Friedland

## SUMMARY[*]

### Jones Act

The panel affirmed the district court's dismissal of an action challenging the constitutionality of the Jones Act's cabotage provisions, which prohibit foreign competition in the domestic shipping market.

Plaintiffs alleged that the Jones Act's provisions impaired interstate trade between Hawaii and the rest of the United States to such an extent that they violated the Constitution. Plaintiffs are individuals and a corporation who reside in Hawaii and claim to have suffered pecuniary injury when they purchased domestic ocean cargo shipping services on west coast Hawaii routes.

The panel held that plaintiffs did not meet their burden to show causation or redressability, two requisite elements for Article III standing. The panel further held that although it was possible that plaintiffs could establish standing if they amended their complaint, any amendment would be futile because plaintiffs' Commerce Clause challenge to the Jones Act would fail on the merits. The panel held that an amended complaint would be subject to dismissal for failure to state a claim because the enactment of the Jones Act was not beyond

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the authority assigned to Congress under the Commerce Clause. The panel also rejected plaintiffs' claim alleging that the Jones Act violated protections guaranteed under the Due Process Clause of the Fifth Amendment. Finally, the panel held that the district court did not violate plaintiffs' procedural due process by ruling on the government's motion to dismiss without an oral hearing.

Judge Friedland concurred. She wrote separately to express her view that *San Diego County Gun Rights Committee v. Reno*, 98F.3d 1121 (9th Cir. 19966), which drove the majority opinion's conclusion that plaintiffs lacked Article III standing, should be reconsidered in an appropriate case.

---

**COUNSEL**

John S. Carroll (argued), Honolulu, Hawaii, for Plaintiffs-Appellants.

Rachel S. Moriyama (argued), Assistant United States Attorney, and Florence T. Nakakuni, United States Attorney, Honolulu, Hawaii, for Defendant-Appellee.

**OPINION**

CLIFTON, Circuit Judge:

This action challenges the constitutionality of the Jones Act's cabotage provisions, which prohibit foreign competition in the domestic shipping market. Plaintiffs allege that these provisions impair interstate trade between Hawaii and the rest of the United States to such an extent that they violate the Constitution. The district court dismissed the action with prejudice, concluding that Plaintiffs failed to satisfy what it framed as prudential standing requirements because they alleged only generalized grievances shared with all residents and businesses in Hawaii.

We affirm the dismissal of this action. Plaintiffs have alleged more than generalized grievances and have demonstrated an "injury in fact," but have not met their burden to show causation or redressability, the other two elements of Article III standing. Although it is possible that Plaintiffs could establish standing if they amended their complaint, any amendment would be futile because Plaintiffs' challenge to the Jones Act would fail on the merits. An amended complaint would, we conclude, be subject to dismissal for failure to state a claim because the enactment of the Jones Act was not beyond the authority assigned to Congress under the Commerce Clause. To the contrary, that statute is precisely the kind of legislation, a regulation of interstate commerce, that the Commerce Clause empowers Congress to enact.

## I.  Background

Plaintiffs are six individuals and one corporation.[1]  All reside in Hawaii and claim to have suffered pecuniary injury when they purchased "domestic ocean cargo shipping services on west coast Hawaii routes."  They sued the United States, claiming that the root of their problem is found in the cabotage provisions of the Jones Act, formally known as the Merchant Marine Act of 1920.  Cabotage is the transport of goods or passengers between two points in the same country. Black's Law Dictionary 243 (10th ed. 2014).

The purpose of the Jones Act is to support this country's merchant marine and its shipbuilding and repair facilities, at least in part so they may be available in times of war or national emergency.  46 U.S.C. § 50101.  One way the statute aims to accomplish this objective is by limiting the domestic shipping market to American companies, excluding foreign competitors.   Under the cabotage provisions, any ship carrying cargo between two points in the United States must have been "built in the United States," 46 U.S.C. § 12112(a)(2)(A), and be "wholly owned by citizens of the United States," *id.* § 55102(b)(1).

---

[1]  The individual plaintiffs and appellants are Patrick Novak, Daniel Rocha, Ken Schoolland, Bjorn Arntzen, Philip Wilkerson, and William Akina; the corporate plaintiff and appellant is Kenner Inc.  The action was filed as a putative class action on behalf of all persons and entities who purchased shipping services between the continental United States and Hawaii in compliance with the Jones Act from at least September 1, 1959 to the present.  Plaintiffs did not seek class certification prior to dismissal of the action by the district court.  Although they initially sought damages and injunctive relief, Plaintiffs have abandoned their claim for damages.

According to Plaintiffs, these provisions violate the basic tenets of the Commerce Clause because they have effectively "impaired, hindered, and substantially affected and completely cut off Hawaii from interstate commerce." "In the absence of highways and railways," the complaint alleges, "the Jones Act promises to nullify interstate commerce to the State of Hawaii."

Plaintiffs' theory is that, by excluding foreign competition, the cabotage provisions have created "an essentially monopolistic Hawaiian ocean shipping market" that has resulted in "high prices" and "a de facto duopoly" of two established firms in the Hawaii-mainland shipping market. Plaintiffs contend that all Hawaii residents and businesses, including themselves, have been harmed not only by the increased shipping costs, but also by the resultant inflated cost of doing business in Hawaii because higher shipping costs lead to higher prices for imported goods. Plaintiffs assert that interstate trade between Hawaii and the rest of the United States has been significantly stifled to such an extent that the effect of the Jones Act's restrictions amounts to "an unlawful restraint of trade and interstate commerce, thereby violating the Commerce Clause of the United States Constitution." Plaintiffs filed this action against the United States, asserting a single cause of action under the Commerce Clause.

The district court granted the government's motion to dismiss the action with prejudice, holding that Plaintiffs failed to establish standing on prudential grounds because they alleged only generalized grievances. Specifically, the court concluded that "Plaintiffs assert only generalized claims on behalf of an extremely broad class of persons or entities that pay for interstate shipping or are consumers of goods that

have been shipped in interstate commerce. . . . This type of broad, generalized allegation is simply insufficient to meet standing requirements." The court's order cited *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997), and *United States v. Hays*, 515 U.S. 737, 743 (1995), among other authorities.

Plaintiffs appealed.

## II. Discussion

We review de novo a district court's determination on the issue of standing. *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009). "Where standing is raised in connection with a motion to dismiss," we "accept as true all material allegations of the complaint, and construe the complaint in favor of the complaining party." *Id.* (alteration, citation, and quotation marks omitted). We also "presume that general allegations embrace those specific facts that are necessary to support the claim." *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 907 (9th Cir. 2011) (citation and quotation marks omitted). We may affirm on any proper ground supported by the record. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1121 (9th Cir. 2013).

### A. Standing

The "irreducible constitutional minimum" of Article III standing consists of (1) "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

### 1. Injury in Fact

"[A]n injury in fact" is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (quotation marks omitted). Because a generalized grievance is not a particularized injury, a suit alleging only generalized grievances fails for lack of standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387 n.3 (2014); *Lance v. Coffman*, 549 U.S. 437, 439–40 (2007) (per curiam); *Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1016 (9th Cir. 2010).

The district court determined that Plaintiffs alleged only generalized grievances and consequently dismissed their action for lack of standing.[2]  In so doing, the district court mistakenly focused only on the size of the population allegedly harmed.  "[T]he fact that a harm is widely shared does not necessarily render it a generalized grievance." *Jewel*, 673 F.3d at 909; *see also Federal Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998) (recognizing that "where a harm is concrete, though widely shared, the Court has found 'injury in fact.'").  Indeed, the instances in which the Supreme Court has labeled a plaintiff's claim a "generalized grievance" "invariably appear[ ] in cases where the harm at issue is not only widely shared, but is also of an abstract and

---

[2] Although the district court framed its analysis under the prudential standing rubric, the Supreme Court subsequently clarified that the rule barring adjudication of generalized grievances is really a matter of constitutional standing under Article III. *Lexmark*, 134 S. Ct. at 1387 n.3.

indefinite nature—for example, harm to the common concern for obedience to law." *Id. at* 23 (citation and internal quotation marks omitted).

Plaintiffs' claim is not a generalized grievance because the harm they allege is not entirely "of an abstract and indefinite nature." *Id.* Plaintiffs allege in their complaint that each of them individually suffered "pecuniary injury and damages as a result of the Jones Act" when they "purchased domestic ocean cargo shipping services." This alleged injury is not the kind of abstract or indefinite harm that the Supreme Court has held to be insufficient to confer standing. *See, e.g.*, *Lance*, 549 U.S. at 441–42 (holding that plaintiffs lacked standing because "[t]he only injury [they] allege is that the law . . . has not been followed"); *Allen v. Wright*, 468 U.S. 737, 754 (1984) ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."), *abrogated on other grounds by Lexmark Int'l*, 134 S. Ct. 1377; *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217, 219–20 (1974) (holding that the "generalized interest of all citizens in constitutional governance . . . is an abstract injury" that is an insufficient basis for standing).

## 2. Causation

The second required element for Article III standing is causation. This means that "there must be a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. "When . . . as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, . . . causation and redressability ordinarily

hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well." *Id*. at 562. "'[M]ore particular facts are needed to show standing'" in such cases. *Mendia v. Garcia*, 768 F.3d 1009, 1013 (9th Cir. 2014) (citing *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)). "That's so because the third parties may well have engaged in their injury-inflicting actions even in the absence of the government's challenged conduct." *Id.* "To plausibly allege that the injury was not the result of the *independent* action of some third party, the plaintiff must offer facts showing that the government's unlawful conduct is at least a substantial factor motivating the third parties' actions." *Id.* (citation and quotation marks omitted).

We dealt with a somewhat analogous issue in *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121 (9th Cir. 1996). In that case, members of various gun rights groups sued the Attorney General of the United States, as well as other government officials, challenging the Violent Crime Control and Law Enforcement Act of 1994 ("VCCA"). *Id.* at 1124. The plaintiffs argued, among other things, that they had standing because they had suffered an economic injury. *Id.* at 1130. They asserted that the VCCA had caused the price of the affected firearms to increase from 40% to 100%. *Id*. We reasoned that "[a]lthough the [VCCA] may tend to restrict supply, nothing in the Act directs manufacturers or dealers to raise the price of regulated weapons," and that "[u]nder *Lujan*, plaintiffs' injury [did] not satisfy the requirements of Article III because it [was] the result of the independent action of some third party not before the court." *Id*.

Here, Plaintiffs suggest that the cabotage provisions of the Jones Act allowed two companies (not parties to this suit) to establish a duopoly whereby they are able to dominate the Hawaii shipping market and charge exorbitant rates. Plaintiffs' own complaint, however, also alleges that the Hawaii shipping market "has several characteristics that made it easy" for the two shipping companies in that market to keep prices high, independent of the Jones Act: "market concentration, significant barriers to entry, ease of information sharing, lack of viable alternatives to ocean shipping, and the commodity nature of ocean shipping services." In this light, Plaintiffs themselves have alleged facts showing that the two companies "may well have engaged in their injury-inflicting actions even in the absence of the government's challenged conduct." *Mendia*, 768 F.3d at 1013. This is fatal to Plaintiffs' effort to allege causation.

### 3. Redressability

The third element of Article III standing, redressability, requires that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citation and internal quotation marks omitted). Although "[p]laintiffs need not demonstrate that there is a 'guarantee' that their injuries will be redressed by a favorable decision," *Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997, 1003 (9th Cir. 1998), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010), they do need to "show that there would be a 'change in a legal status'" as a consequence of a favorable decision "and that a 'practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th

Cir. 2012) (citing *Utah v. Evans*, 536 U.S. 452, 464 (2002)). There is no standing if, following a favorable decision, whether the injury would be redressed would still depend on "the unfettered choices made by independent actors not before the courts." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989).

Here, Plaintiffs have not shown a likelihood that the shipping companies would lower their prices if the challenged provisions of the Jones Act were invalidated. On the contrary, as we have noted, Plaintiffs themselves have alleged several reasons—"market concentration, significant barriers to entry, ease of information sharing, lack of viable alternatives to ocean shipping, and the commodity nature of ocean shipping services,"—that suggest prices might remain high even if the Jones Act were invalidated. Indeed, Plaintiffs allege that the two shipping companies serving the Hawaii market have engaged in a "conspiracy" to keep prices high. But, as Plaintiffs acknowledge in their complaint, the Jones Act "does not permit collusion, market sharing, market allocation, market manipulation or price fixing." This suggests that enjoining enforcement of the Jones Act would not redress the alleged conspiracy between the shipping companies. According to Plaintiffs' own complaint, any such conspiracy would be the result of "the unfettered choices made by independent actors not before the courts." *ASARCO*, 490 U.S. at 615.

## B.  Leave to Amend

We must next decide whether Plaintiffs should be granted leave to amend in order to correct the deficiencies we have identified. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a party's pleading "should [be]

freely give[n] . . . when justice so requires," because the purpose of the rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (alterations in original) (citation and quotation marks omitted). Nevertheless, the "general rule that parties are allowed to amend their pleadings . . . does not extend to cases in which any amendment would be an exercise in futility or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (citations omitted). Futility alone can justify a court's refusal to grant leave to amend. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

We decline to order that leave be granted to amend the complaint. We conclude that amendment would be an exercise in futility because even if Plaintiffs established standing, they would still fail to state a claim.[3] Plaintiffs' claim under the Commerce Clause would not survive a motion to dismiss because the Commerce Clause does not limit the authority of Congress to regulate interstate commerce. By its terms, the Commerce Clause empowers Congress to "regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. As

---

[3] Strictly from a standing perspective, it would not necessarily be futile for Plaintiffs to amend their complaint. Materials outside the record support the notion that the Jones Act causes economic injury to residents of Hawaii. *See, e.g.*, U.S. Int'l Trade Comm'n, The Economic Effects of Significant U.S. Import Restraints xviii (2002) (estimating that the economic welfare gain from the "complete liberalization of maritime cabotage services under the Jones Act . . . would be slightly more than $656 million"). If Plaintiffs cured the deficiencies we have identified in their complaint, they might well be able to establish Article III standing to challenge the Jones Act.

Plaintiffs themselves acknowledge, the broad power of Congress has been well established for nearly 200 years, at least since *Gibbons v. Ogden*, 22 U.S. 1 (1824). There may sometimes be debates as to whether a given enactment by Congress falls within its authority under the Commerce Clause—debates that might turn on whether the regulated activity has a sufficient effect on interstate commerce. *See, e.g.*, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2587 (2012). But "[t]he commerce clause is in no sense a limitation upon the power of Congress over interstate and foreign commerce." *Prudential Ins. Co. v. Benjamin*, 328 U.S. 408, 423 (1946).

Plaintiffs' complaint is aimed squarely at a regulation of commerce among the several states, specifically shipping between Hawaii and the other states. Indeed, Plaintiffs allege that the Jones Act violates the Commerce Clause because its cabotage provisions constitute "an unlawful restraint of trade and interstate commerce." Thus, they acknowledge that the regulation at issue here concerns interstate commerce.

That the regulation may be a "restraint of trade" does not matter. As noted above, the Commerce Clause does not limit the power of Congress to regulate interstate commerce. *Id.* Quite the opposite, it is well established that, by virtue of the Commerce Clause, Congress has broad authority to regulate the channels and instrumentalities of interstate commerce, as well as any activity substantially relating to interstate commerce. *See, e.g.*, *United States v. Lopez*, 514 U.S. 549, 558 (1995); *Prudential Ins.*, 328 U.S. at 423.

It is true that the purpose of the Commerce Clause is to encourage and promote interstate commerce. *Bos. Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 328 (1977). But

the Supreme Court has made clear that this means the Clause prevents *states* from burdening interstate commerce. *See General Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997) ("The negative or dormant implication of the Commerce Clause prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace.") (citations, alteration, and quotation marks omitted). As to Congress, however, it is solely a grant of power to regulate the realm of interstate commerce, not a restriction.[4] In particular, contrary to Plaintiffs' implied assertion, the antitrust laws are not written into the Commerce Clause as a limit on Congress' power. The Commerce Clause does not provide a legal basis for Plaintiffs' claim.

On appeal, perhaps in tacit recognition that the legal theory espoused in their complaint was not viable, Plaintiffs have argued that, even if the Jones Act is a valid exercise of congressional power derived from the Commerce Clause, it violates protections guaranteed under the Due Process Clause of the Fifth Amendment. In the context of the Commerce

---

[4] The federal government only has the powers granted to it by the Constitution. The definition of interstate commerce under the Commerce Clause thus affects the scope of the authority given Congress by that clause, and court decisions emphasizing limits on the definition of interstate commerce are sometimes described as limiting the authority of Congress. *See, e.g.*, *Lopez*, 514 U.S. at 566 ("Congress' authority is limited to those powers enumerated in the Constitution, and . . . those enumerated powers are interpreted as having judicially enforceable outer limits . . . ."). Here, however, there is no dispute that the Jones Act regulates interstate commerce under any definition, and the Commerce Clause places no limits on the power of Congress to regulate within that interstate commerce realm. "[T]he sovereignty of Congress, though limited to specified objects, is plenary as to those objects." *Gibbons*, 22 U.S. at 197.

Clause, we have held that "the requirements of due process are satisfied if the law passed . . . has a reasonable relation to a legitimate legislative purpose and is not arbitrary, capricious or discriminatory." *Boylan v. United States*, 310 F.2d 493, 498 (9th Cir. 1962). Plaintiffs do not argue that the Jones Act's cabotage provisions are not reasonably related to a legitimate legislative purpose, nor do they assert that the provisions are arbitrary or capricious.

Plaintiffs do contend that the Jones Act is discriminatory because its effects on Hawaii commerce are disproportionate as compared to the rest of the United States. But that alleged discrimination does not support a viable cause of action, whether framed as a matter of due process or as an attempt to enforce a supposed structural limitation on federal power under the Commerce Clause. "There is no requirement of uniformity in connection with the commerce power." *Currin v. Wallace*, 306 U.S. 1, 14 (1939); *see also Am. Trucking Ass'ns v. United States*, 344 U.S. 298, 322 & n.20 (1953) (explaining that the Due Process Clause is not violated even where a regulatory scheme causes some businesses to fail); *Sec'y of Agric. v. Cent. Roig Ref. Co.*, 338 U.S. 604, 616–19 (1950) (explaining that legislation did not offend the Due Process Clause even where it set different quotas for sugar from refiners in island territories than from refiners on the mainland, thereby creating inequalities); *see generally* Thomas B. Colby, *Revitalizing the Forgotten Uniformity Constraint on the Commerce Power*, 91 Va. L. Rev. 249 (2005) (considering historical arguments in favor of an inherent uniformity constraint on the commerce power, but recognizing that the Supreme Court has for decades consistently stated that no such constraint exists).

The closest that Plaintiffs come to identifying legal support for their due process theory is to quote, in both their opening brief and their reply brief, from the Supreme Court's 1939 decision in *Currin*, specifically the first sentence of the following paragraph:

> If it be assumed that there might be discrimination of such an injurious character as to bring into operation the due process clause of the Fifth Amendment, that is a different matter from a contention that mere lack of uniformity in the exercise of the commerce power renders the action of Congress invalid. For that contention we find no warrant. It is of the essence of the plenary power conferred that Congress may exercise its discretion in the use of the power. Congress may choose the commodities and places to which its regulation shall apply. Congress may consider and weigh relative situations and needs. Congress is not restricted by any technical requirement but may make limited applications and resort to tests so that it may have the benefit of experience in deciding upon the continuance or extension of a policy which under the Constitution it is free to adopt. As to such choices, the question is one of wisdom and not of power.

*Currin*, 306 U.S. at 14. The first sentence might acknowledge that there could be a due process limitation on some exercises of power, but it does not support Plaintiffs' claim that the Jones Act crosses the line. The rest of the

paragraph provides the most telling response, especially the final sentence.  It is not for us to evaluate the wisdom of the Jones Act.  That task is for Congress.  Congress has the power to regulate interstate commerce, and it is up to Congress to decide how to exercise it.  As Chief Justice Marshall stated nearly 200 years ago, "[t]he wisdom and the discretion of Congress, their identity with the people, and the influence which their constituents possess at elections, are, in this, as in many other instances . . . the sole restraints . . . to secure them from its abuse."  *Gibbons*, 22 U.S. at 197.

Likewise, although it is true that "[t]he liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws," *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013), "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).  Where, as here, rational basis review applies and "there are plausible reasons for Congress' action, our inquiry is at an end."  *Id*. at 313–14 (quotation marks omitted).  This is not, for instance, a case involving invidious racial discrimination, *e.g.*, *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954), or indeed a case of intentional, invidious discrimination of any kind, *see generally Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) (holding that a "discriminatory intent or purpose is required to show a violation of the Equal Protection Clause").

Thus, we decline to order that leave be granted for Plaintiffs to amend their complaint because, for the reasons discussed above, it would be futile to do so.

## C.  *Procedural Due Process*

Plaintiffs also assert that the district court violated their right to procedural due process by ruling on the government's motion to dismiss without an oral hearing.  We reject this argument.  Plaintiffs admit they "had [an] opportunity to present arguments counter to Defendant's motion," but they do not explain why that opportunity to present arguments in writing was inaedquate for purposes of due process.  It was sufficient.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process . . . are notice and an opportunity to respond.  The opportunity to present reasons, either in person *or in writing*, why [a] proposed action should not be taken is a fundamental due process requirement." (emphasis added)).  The district court did not err in ruling on the government's motion without an oral hearing.

## III.    Conclusion

Plaintiffs' complaint fails to make the showing necessary to establish Article III standing.  We affirm the dismissal of the action and we decline to grant leave to amend the complaint.

**AFFIRMED.**

FRIEDLAND, Circuit Judge, concurring:

I concur in Judge Clifton's thoughtful opinion, which faithfully applies our circuit precedent.  I write separately to express my view that *San Diego County Gun Rights*

*Committee v. Reno*, 98 F.3d 1121 (9th Cir. 1996), which drives the opinion's conclusion that Plaintiffs lack Article III standing, should be reconsidered in an appropriate case.

*Gun Rights* ignores one of the most basic rules of microeconomics. According to *Gun Rights*, the fact that a law "restrict[s] supply" of a good is insufficient to support the inference that the law causes an increase in the price of that good. 98 F.3d at 1130. But the law of supply and demand tells us that, when demand for a good remains constant, a decrease in the supply of that good will cause an increase in price. *See* DAVID BESANKOW & RONALD R. BRAEUTIGAM, MICROECONOMICS 37 (4th ed. 2010); *see also* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, 13A FEDERAL PRACTICE & PROCEDURE § 3531.5 n.35 (3d ed. 2008) (criticizing the causation analysis in *Gun Rights* for failing to recognize that "[r]estriction of lawful supply inevitably increases the price absent a change in the demand schedule").

In accordance with basic economics, plaintiffs should be able to show that a challenged statute has caused an increase in price by showing that it has decreased supply. But *Gun Rights* prevents plaintiffs from establishing causation in this manner unless they can show that the statute actually "directs manufacturers or dealers to raise the price of regulated" goods. 98 F.3d at 1130. This contravenes the rule that causation may be indirect: "causation may be found even if there are multiple links in the chain connecting the defendant's unlawful conduct to the plaintiff's injury." *Mendia v. Garcia*, 768 F.3d 1009, 1012 (9th Cir. 2014). As long as plaintiffs can show, "without relying on speculation or guesswork," that challenged governmental conduct is "at least a substantial factor" behind an injury, they can establish

causation. *Id.* at 1013. The law of supply and demand requires no speculation or guesswork, so there should be little doubt that a statute reducing supply is at least a substantial factor behind a rise in price.

Were it not for *Gun Rights*, I would conclude that Plaintiffs have standing to challenge the Jones Act. At a minimum, Plaintiffs allege that the Jones Act limits the supply of vessels available to serve the Hawaii shipping market. This alone should be sufficient to establish that the Jones Act causes prices in that market to be higher than they otherwise would be. But, regrettably, *Gun Rights* requires more.

That said, this case is a poor vehicle for revisiting *Gun Rights* because, as Judge Clifton's opinion explains, Plaintiffs have failed to state a claim whether or not they have established standing. I expect the day will come, however, when it will be necessary to reconsider how plaintiffs injured by high prices can show that a defendant's challenged conduct caused those prices to increase. When it does, we should overrule *Gun Rights* and bring the law of our circuit into conformity with fundamental principles of economics.