# SUPREME COURT OF THE UNITED STATES

## KEITH LANCE ET AL. *v.* MIKE COFFMAN, COLORADO SECRETARY OF STATE

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

No. 06–641.   Decided March 5, 2007

PER CURIAM.

The Elections Clause of the United States Constitution provides that the "Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the *Legislature* thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." Art. I, §4, cl. 1 (emphasis added). When Colorado legislators were unable to redraw congressional districts after the 2000 census to accommodate an additional Representative, a state court did it for them. See *Beauprez* v. *Avalos*, 42 P. 3d 642 (Colo. 2002) (en banc). The legislature *was* able to pass a redistricting plan in 2003, which Colorado's Governor signed into law. See Colo. Rev. Stat. Ann. §2–1–101.

Colorado's attorney general, however, filed an original action in the Colorado Supreme Court to enjoin Colorado's secretary of state from implementing this new plan, noting that Article V, §44, of the Colorado Constitution limits redistricting to once per census. The Colorado General Assembly intervened in the action to defend its plan. The Colorado Supreme Court granted the injunction, holding that "judicially-created districts are just as binding and permanent as districts created by the General Assembly," and that the court-drawn plan must remain in effect until the next decennial census. *People ex rel. Salazar* v. *Davidson*, 79 P. 3d 1221, 1231 (2003) (en banc), cert. denied, 541

U. S. 1093 (2004). The court further held that this result did not offend the Elections Clause of the United States Constitution. 79 P. 3d, at 1232.

Immediately after *Salazar* was decided, four Colorado citizens—none of whom had participated in *Salazar*—filed the instant action in Federal District Court. They argued that Article V, §44, of the Colorado Constitution, as interpreted by the Colorado Supreme Court, violates their rights under the Elections Clause.

The District Court initially determined that it lacked jurisdiction to hear the suit in light of the *Rooker-Feldman* doctrine, but we vacated and remanded for further proceedings. *Lance* v. *Dennis*, 546 U. S. 459 (2006) *(per curiam)*. On remand, the District Court held that the citizen-plaintiffs had standing to bring their Elections Clause challenge. *Lance* v. *Dennis,* 444 F. Supp. 2d 1149, 1154–1155 (2006). The court went on, however, to hold that the suit was barred by issue preclusion because the plaintiffs "stand in privity with the Secretary of State and the General Assembly," who were on the losing side in the *Salazar* litigation. 444 F. Supp. 2d, at 1161. The concurring judge concluded that appellants lacked standing to sue in the first place. *Id.,* at 1162 (Porfilio, J., concurring in result). Plaintiffs appeal once again.

Federal courts must determine that they have jurisdiction before proceeding to the merits. *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 94–95 (1998).* Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." One component of the case-or-controversy requirement is standing, which requires a plaintiff to demonstrate the now-familiar

————————

*Our prior decision in this case did not violate this principle because *Rooker-Feldman* concerns a district court's subject-matter jurisdiction, *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U. S. 280, 291 (2005), and "there is no unyielding jurisdictional hierarchy," *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U. S. 574, 578 (1999).

elements of injury in fact, causation, and redressability. See *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560–561 (1992). "We have consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Id.,* at 573–574. See also *DaimlerChrysler Corp.* v. *Cuno*, 547 U. S. \_\_\_, \_\_\_ (2006) (slip op., at 8) (refusing to create an exception to the general prohibition on taxpayer standing for challenges to state tax or spending decisions, and observing that taxpayer standing has been rejected "because the alleged injury is not 'concrete and particularized,' but instead a grievance the taxpayer 'suffers in some indefinite way in common with people generally'" (citation omitted)).

Our refusal to serve as a forum for generalized grievances has a lengthy pedigree. In *Fairchild* v. *Hughes*, 258 U. S. 126 (1922), for example, a citizen sued the Secretary of State and the Attorney General to challenge the procedures by which the Nineteenth Amendment was ratified. We dismissed the suit because it was "not a case within the meaning of . . . Article III." *Id.,* at 129. The plaintiff sought to assert "only the right, possessed by every citizen, to require that the Government be administered according to law and that the public moneys be not wasted." *Ibid.* "Obviously," we held, "this general right does not entitle a private citizen to institute [a suit] in the federal courts." *Id.,* at 129–130.

Similarly, in *Ex parte Lévitt*, 302 U. S. 633 (1937) *(per curiam),* we dismissed a citizen suit claiming that Justice Black's appointment to this Court contravened the Constitution's Ineligibility Clause, Art. I, §6, cl. 2. We found that the petitioner had no interest in the suit "other than that of a citizen and a member of the bar of this Court." 302

U. S., at 634. That was not enough. To have standing, we observed, a plaintiff must have more than "a general interest common to all members of the public." *Ibid.* See also *Frothingham* v. *Mellon*, decided with *Massachusetts* v. *Mellon*, 262 U. S. 447, 488 (1923) (taxpayer standing cannot be predicated upon an injury the plaintiff "suffers in some indefinite way in common with people generally"). Cf. *Tyler* v. *Judges of Court of Registration*, 179 U. S. 405, 406 (1900) ("[E]ven in a proceeding which he prosecutes for the benefit of the public . . . [the plaintiff] must generally aver an injury peculiar to himself, as distinguished from the great body of his fellow citizens").

A pair of more recent cases further illustrates the point. In *United States* v. *Richardson*, 418 U. S. 166 (1974), a federal taxpayer challenged the Government's failure to disclose certain CIA expenditures as a violation of the Constitution's Accounts Clause, which requires that "a regular Statement and Account of the Receipts and Expenditures of all public Money shall be published from time to time." Art. I, §9, cl. 7. Relying on *Lévitt*, this Court dismissed the claim as a "generalized grievance" that is "plainly undifferentiated and 'common to all members of the public.'" *Richardson*, 418 U. S., at 176–177. See also *id.,* at 191 (Powell, J., concurring) ("The power recognized in *Marbury* v. *Madison*, 1 Cranch 137 (1803), is a potent one. Its prudent use seems to me incompatible with unlimited notions of taxpayer and citizen standing").

The same day, in *Schlesinger* v. *Reservists Comm. to Stop the War*, 418 U. S. 208 (1974), we addressed standing to bring a challenge under the Constitution's Incompatibility Clause, which provides that "no Person holding any Office under the United States, shall be a Member of either House during his Continuance in Office." Art. I, §6, cl. 2. Citizen-taxpayers brought a lawsuit contending that Members of Congress who were also members of the military Reserves violated the Incompatibility Clause. This

Court dismissed for lack of standing. It "reaffirm[ed] *Lévitt* in holding that standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." 418 U. S., at 220. Refusing to entertain generalized grievances ensures that "there is a real need to exercise the power of judicial review" in a particular case, and it helps guarantee that courts fashion remedies "no broader than required by the precise facts to which the court's ruling would be applied." *Id.,* at 221–222. In short, it ensures that courts exercise power that is judicial in nature.

The instant case parallels *Fairchild*, *Lévitt*, and their progeny. The plaintiffs here are four Colorado voters. Three days after the Colorado Supreme Court issued its decision in *Salazar*, they filed a complaint alleging that "Article V, §44 of the Colorado Constitution, as interpreted in *Salazar*, violated [the Elections Clause] of the U. S. Constitution by depriving the state legislature of its responsibility to draw congressional districts." *Lance* v. *Davidson*, 379 F. Supp. 2d 1117, 1122 (2005). In light of the discussion above, the problem with this allegation should be obvious: The only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past. It is quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing. See, *e.g., Baker* v. *Carr*, 369 U. S. 186, 207–208 (1962). Because plaintiffs assert no particularized stake in the litigation, we hold that they lack standing to bring their Elections Clause claim.

Our two decisions construing the term "Legislature" in the Elections Clause do not contradict this holding. Each

of these cases was filed by a relator on behalf of the State rather than private citizens acting on their own behalf, as is the case here.  See *State ex rel. Smiley* v. *Holm*, 184 Min. 647, 238 N. W. 792 (1931) *(per curiam),* rev'd *sub nom. Smiley* v. *Holm*, 285 U. S. 355 (1932); *Ohio ex rel. Davis* v. *Hildebrant*, 241 U. S. 565 (1916).  In neither case did we address whether a private citizen had alleged a "concrete and particularized" injury sufficient to satisfy the requirements of Article III.

The judgment of the United States District Court for the District of Colorado is therefore vacated in part, and the case is remanded with instructions to dismiss the Elections Clause claim for lack of standing.  We affirm the District Court's dismissal of the Petition Clause claim.

*It is so ordered.*