# United States Court of Appeals
### For the Eighth Circuit
_____

No. 14-2484
_____

Ron Golan; Dorit Golan, individually and on behalf of all others similarly situated

*Plaintiffs - Appellants*

v.

Veritas Entertainment, LLC; Veritas Marketing Group, LLC; FreeEats.com, Inc., doing business as CC Advertising; AIC Communications, LLC, doing business as CC Advertising; Gabriel S. Joseph, III; Stephen Wayne Griffin; Mission City Management, Inc.; Courage 2012, LLC; James R. Leininger; SixDi, Inc., doing business as SixDi; Bob Brewer; Michael Dale Huckabee, also known as Mike Huckabee

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: March 11, 2015
Filed: June 8, 2015
_____

Before MURPHY and SHEPHERD, Circuit Judges, and BROOKS,[1] District Judge.
_____

MURPHY, Circuit Judge.

---

[1] The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas, sitting by designation.

In September 2012 Ron and Dorit Golan received two unsolicited, prerecorded messages on their home phone line. Each message stated: "Liberty. This is a public survey call. We may call back later." The Golans filed a putative class action against Veritas Entertainment, LLC, Veritas Marketing Group, LLC, FreeEats.com, Inc., AIC Communications, LLC, Gabriel Joseph, Stephen Griffin, Mission City Management, Inc., Courage 2012, LLC, James Leininger, SixDi, Inc., Bob Brewer, and Mike Huckabee (collectively, "defendants"), alleging that defendants initiated the phone calls as part of a telemarketing campaign to promote the film Last Ounce of Courage, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Missouri Do Not Call Law, Mo. Rev. Stat. § 407.1098. The district court dismissed the complaint with prejudice, concluding that the Golans did not have standing and were inadequate class representatives, and they now appeal. We reverse and remand.

Last Ounce of Courage was initially owned by Eastern Gate Films, LLC. During the production of the film, Eastern Gate asked Stephen Griffin, the president and chief executive officer of Veritas Entertainment, LLC and Veritas Management, LLC, to "come alongside and fix the film." Griffin accepted the offer in exchange for a 49 percent ownership interest in Last Ounce of Courage. Eastern Gate sold its remaining interest in the film to James Leininger, the manager of Mission City Management, Inc. and Courage 2012, LLC, after he invested $10,000,000 in marketing the film. Leininger and Griffin then hired Gabriel Joseph, the owner of AIC Communications, LLC, to launch a telemarketing campaign to promote the film. Using the "celebrity voice" of Mike Huckabee, they agreed to play the following prerecorded script to 4 million residential phone lines and 30 million cell phones:

> Hello, this is Governor Mike Huckabee, with a 45-second survey. Do
> you believe in American freedom and liberty? . . . Would you, like me,
> Mike Huckabee, like to see Hollywood respect and promote traditional
> American values? I am an enthusiastic supporter of a new movie called
> Last Ounce of Courage. It is a film about faith, freedom, and taking a

stand for American values. May I tell you more about why I recommend that you . . . see the movie Last Ounce of Courage? (Please note that only "yes" responses go to [the next segment of the script].)

Thank you for your interest. Last Ounce of Courage opens in theaters on Friday, September 14, [2012]. Last Ounce of Courage will inspire you and your loved ones to celebrate our nation and the sacrifices made to protect our liberties. It is a great story about taking a stand for religious freedom. The film is a timely reminder of all that is worth defending in our nation. Experience the Last Ounce of Courage trailer and see audience reactions at www.lastouncethemovie.com, that's last ounce the movie dot com. Would you like to hear this information again? (Please note that only "yes" responses [repeat this segment of the script and] all other responses go to [the next segment of the script].)

Thank you for your answers so far. I have just [one] more question[] for demographic purposes. Do you own a smart phone?

If a recipient did not answer the call, the following message would be left on the answering machine: "Liberty. This is a public survey call. We may call back later."

After Huckabee recorded the script on September 4, 2012, Joseph hired Bob Brewer, an officer of the information technology company SixDi, Inc., to "review the script" and research "the cities and states where the most theaters would be showing the movie." Brewer charged AIC Communications for the work, but the bills were paid by Griffin on behalf of Veritas Entertainment and Veritas Management. Griffin also paid Joseph and AIC Communications $248,500 for their work on the campaign.

Although the Golans were registered on federal and state "do not call" lists, Joseph and AIC Communications obtained their telephone number from a database

they had purchased from Axiom Corporation. AIC Communications called the Golans on September 10, 2012 as part of the campaign. The Golans did not answer the call, so they heard only the automated message: "Liberty. This is a public survey call. We may call back later." AIC Communications called the Golans again on September 12, 2012 and recorded the same message. Last Ounce of Courage opened nationwide two days later. Approximately 1,400 cinemas played the film that day including the Wehrenberg Chesterfield Galaxy 14 Theater, located near the home of the Golans in Chesterfield, Missouri. In total, AIC Communications called 4 million residential phone lines, and over 1 million live responses were detected, subjecting those recipients to the majority of the prerecorded script. The remaining recipients who did not answer the call, like the Golans, heard only the brief message recording.

The Golans sued Veritas Entertainment and Veritas Marketing in Missouri state court on October 3, 2012, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(B), and 47 C.F.R. § 64.1200(a). After initial discovery, they filed an amended class action complaint, adding Joseph, AIC Communications, Freeeats.com, Inc., Griffin, Mission City, Courage 2012, Leininger, SixDi, Brewer, and Huckabee as defendants to the action. The Golans then moved to certify a class of "persons in the United States to whom [defendants] within four years of October 3, 2012, initiated one or more telephone calls to such persons' residential telephone lines using the recorded voice of Mike Huckabee to deliver a message as part of the above-mentioned campaign regarding the movie Last Ounce of Courage," in violation of § 227(b)(1)(B) of the Telephone Consumer Protection Act. They also sought to represent a subclass of Missouri residents who were registered on Missouri "do not call" lists and received more than one telephone solicitation by or on behalf of defendants, in violation of the Missouri Do Not Call Law, Mo. Rev. Stat. § 407.1098.

Defendants removed the case to federal district court on January 16, 2014. While Griffin, Veritas Entertainment, Veritas Marketing, Joseph, AIC Communications, and Freeeats.com, Inc., answered the amended class action

complaint, Mission City, Courage 2012, Leininger, and Huckabee moved to dismiss it on the ground that they could not be held vicariously liable for the calls. The Golans moved to file a second amended class action complaint and to stay further briefing on class certification. In response to the motions, the district court found "issues of considerable concern that warrant[ed] holding any ruling in abeyance, pending additional briefing by the parties." On its own accord, the court questioned "whether [the Golans had] suffered any injury sufficient to give them standing to bring this case in federal court and whether they [were] proper class representatives."

After the parties briefed those issues, the district court concluded that the Golans had not suffered an injury in fact because none of the messages they had received "contained an advertisement, telemarketing message, or telephone solicitation," in violation of the Telephone Consumer Protection Act (TCPA) or the Missouri Do Not Call Law. The district court also concluded that the Golans were inadequate class representatives because they could not show that their claims were typical of putative class members under Federal Rule of Civil Procedure 23(a). Unlike most putative class members who had heard the full script of the call, the court reasoned that the Golans were subject to a "unique defense" because they had heard only the brief message recording on their answering machine. It thus dismissed the case without addressing whether Mission City, Courage 2012, Leininger, or Huckabee could be held vicariously liable for the calls, and the Golans now appeal.

The Golans first argue that the district court erred in concluding that they lacked standing to pursue their TCPA claims because they had not suffered an injury in fact.[2] We review the district court's standing determination de novo. Plymouth Cnty., Iowa v. Merscorp, Inc., 774 F.3d 1155, 1158 (8th Cir. 2014). Article III

---

[2] Because the Golans waived argument related to their Missouri Do Not Call Law claims by failing to mention those claims in their briefs, we limit our review to the dismissal of the TCPA claims. Fair v. Norris, 480 F.3d 865, 869 (8th Cir. 2007).

standing requires a plaintiff to "demonstrate the now-familiar elements of injury in fact, causation, and redressability." Lance v. Coffman, 549 U.S. 437, 439 (2007). Although Congress may not convert a generalized grievance into an "individual right vindicable in the courts," Lujan v. Defenders of Wildlife, 504 U.S. 555, 577 (1992), it "may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of the statute," Warth v. Seldin, 422 U.S. 490, 514 (1975).  Injury in fact may thus be shown "solely by the invasion of a legal right that Congress created." Hammer v. Sam's East, Inc., 754 F.3d 492, 498 (8th Cir. 2014).

With few exceptions, the TCPA prohibits the initiation of "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party."  47 U.S.C. § 227(b)(1)(B). Congress created a private right of action for enforcement of violations of the statute, permitting recovery for "actual monetary loss from such a violation, [or] $500 in damages for each such violation, whichever is greater." Id. § 227(b)(3)(B).  Since the TCPA creates a statutory cause of action, we must consider whether the Golans have alleged an injury under it sufficient to confer standing. See Hammer, 754 F.3d at 499.

Congress enacted the TCPA to protect consumers from the "proliferation of intrusive [telemarketing] calls to their homes." Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745 (2012).  Although most states had enacted legislation restricting telemarketing, members of Congress believed that federal law was necessary because telemarketers could evade state law through interstate operations. See id.  The TCPA thus prohibits "any person within the United States, or any person outside the United States if the recipient is within the United States," from using prerecorded messages to call residential phone lines without prior consent, "unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph 2(B)." 47 U.S.C. § 227(b)(1)(B). Paragraph 2(B) provides that the Federal Communications Commission (FCC) may exempt noncommercial calls, see id. §

227(b)(2)(B)(i), and commercial calls if they do not "adversely affect the privacy rights that this section is intended to protect [and] do not include the transmission of any unsolicited advertisement," see id. § 227(b)(2)(B)(ii)(I)–(II). The FCC has subsequently exempted from regulation any artificial or prerecorded call which is "made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing." 47 C.F.R. § 64.1200(a)(3)(iii); accord In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd. 14014, 14101 ¶ 145, 2003 WL 21517853, at *51 (F.C.C. July 3, 2003).

The messages at issue here stated, "Liberty. This is a public survey call. We may call back later." Even if the calls were made for a commercial purpose, defendants contend that they did not violate the TCPA because neither message contained an "advertisement" or qualified as "telemarketing" under the implementing regulations. "Advertisements" include "material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Because the messages did not mention property, goods, or services, we agree that they were not advertisements prohibited by the TCPA or its implementing regulations. Id.

While the content of the calls controlled whether they were "advertisements," their purpose controlled whether they were "telemarketing." The implementing regulations define "telemarketing" as the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). A "person or entity 'initiates' a telephone call when it takes the steps necessary to physically place [the] call." In the Matter of the Joint Petition filed by Dish Network, LLC, 28 F.C.C. Rcd 6574, 6583 ¶ 26, 2013 WL 1934349, at *8 (F.C.C. May 9, 2013).

Notwithstanding the plain language of the regulations, defendants argue that we should consider only the content of the calls in determining whether they were "telemarketing." See, e.g., Alleman v. Yellowbook, Inc., No. 12-CV-1300-DRH-

PMF, 2013 WL 4782217, at *6 (S.D. Ill. Sept. 6, 2013). We refuse to do so. Neither the TCPA nor its implementing regulations "require an explicit mention of a good, product, or service" where the implication of an improper purpose is "clear from the context." Chesbro v. Best Buy Stores, L.P., 705 F.3d 913, 918 (9th Cir. 2012). Congressional findings indicate that consumers consider "prerecorded calls, regardless of the content [of the] message, to be a nuisance and an invasion of privacy." See TCPA of 1991, Pub. L. No. 102–243, 105 Stat. 2394, § 2(10). Even when the intended content of a message is not conveyed, the intrusion into the home and the "seizure" of the phone line is the same. Id. § 2(5).

Senator Hollings, the sponsor of the TCPA, has explained that "computerized calls are the scourge of modern civilization." Mims, 132 S. Ct. at 752 (citing 137 Cong. Rec. 30821–30822 (1991)). They wake us up in the morning, interrupt our dinner at night, force the sick out of bed, and "hound us until we want to rip the telephone right out of the wall." Id. Given these findings and the plain language of the regulations, we conclude that content may be instructive, but it is not dispositive. Cf. Solis v. Summit Contractors, Inc., 558 F.3d 815, 823–24 (8th Cir. 2009). "Telemarketing" occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services. See 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49.

Here, the context of the calls indicates that they were initiated for the purpose of promoting Last Ounce of Courage. The Golans alleged that Leininger and Griffin hired Joseph of AIC Communications to promote the film as part of a nationwide "telemarketing campaign." Although the campaign appeared to survey whether recipients had "traditional American values," Griffin and Joseph were "more concerned with getting viewers to see Last Ounce of Courage than gathering information about them." AIC Communications thus called the Golans and 4 million

other phone lines by using a prerecorded script that promoted the film as a "timely reminder of all that is worth defending in our nation" and "a great story about taking a stand for religious freedom." The script explained where recipients could watch the trailer and when the film would open. Since the calls were initiated and transmitted to the Golans in order to promote Last Ounce of Courage, they qualified as "telemarketing" even though the messages never referenced the film. See 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12). The district court therefore erred in concluding that the calls were exempt from regulation and that the Golans had failed to allege an injury in fact sufficient to confer Article III standing. See Hammer, 754 F.3d at 499; cf. Wallace v. ConAgra Foods, Inc., 747 F.3d 1025, 1033 (8th Cir. 2014).

The Golans next argue that the district court erred in concluding that they were inadequate class representatives because they could not show that their TCPA claims were typical of putative class members under Federal Rule of Civil Procedure 23(a). A trial court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." General Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982). The typicality and adequacy criteria serve as "guideposts" for determining whether "maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997). We review the district court's rulings on these issues for an abuse of discretion, reversing only if the court committed an error of law or rested its conclusions on clearly erroneous factual determinations. See, e.g., Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005).

Relying on its conclusion that the Golans lacked standing to pursue their TCPA claims, the district court concluded that they were inadequate class representatives. It is well established that a plaintiff who lacks standing to assert his claims cannot be a proper class representative under Rule 23(a). See Hall v. Lhaco, Inc., 140 F.3d 1190, 1196 (8th Cir. 1998); Great Rivers Co-op. of S.E. Iowa v. Farmland Indus.,

Inc., 120 F.3d 893, 899 (8th Cir. 1997). That is not the situation here, however, for the Golans have alleged an injury under the TCPA, see 47 U.S.C. § 227(b)(1)(B), along with the remaining elements of causation and redressability, see id. § 227(b)(3). Cf. Vervaecke v. Chiles, Heider & Co., Inc., 578 F.2d 713, 719–20 (8th Cir. 1978).

The district court also concluded that the Golans were inadequate class representatives because they suffered a different injury than class members who had heard the full script of the prerecorded message. Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1539 (8th Cir. 1996). A class representative is "not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation." In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir. 1999). Because the purpose of the calls is the critical issue in this case, see 47 C.F.R. § 64.1200(f)(12), the Golans were not subject to a unique defense. Nor did they suffer a different injury than class members who heard the entire message. What matters for all class members, including the Golans, is that each call was initiated for the purpose of promoting Last Ounce of Courage. Cf. In re Milk Prods. Antitrust Litig., 195 F.3d at 437. The district court therefore erred as a matter of law in concluding that the Golans were inadequate class representatives.

Although the district court did not rule on whether Mission City, Courage 2012, Leininger, or Huckabee could be held vicariously liable for the calls, defendants argue for affirmance on this alternative ground. As a general rule, federal appellate courts "do not decide issues that the district court did not adjudicate." E.g., Daisy Mfg. Co., Inc. v. NCR Corp., 29 F.3d 389, 395 (8th Cir. 1994). We thus decline to pass on this issue and remand to the district court to consider whether those defendants can be held vicariously liable for the calls. See, e.g., Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 603 (8th Cir. 2009).

For these reasons, we reverse the judgment and remand the case to the district court for further proceedings consistent with this opinion.

_____