In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 17-2422

THE CORNUCOPIA INSTITUTE, DOMINIC MARCHESE, and REBECCA GOODMAN,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES DEPARTMENT OF AGRICULTURE and SONNY PERDUE, Secretary of Agriculture,

*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 16-cv-246-wmc — **William M. Conley**, *Judge*.

---

ARGUED JANUARY 8, 2018 — DECIDED MARCH 12, 2018

---

Before EASTERBROOK and SYKES, *Circuit Judges*, and BUCKLO, *District Judge*.[*]

EASTERBROOK, *Circuit Judge*. The National Organic Standards Board, an advisory committee, has 15 members, all ap-

---

[*] Of the Northern District of Illinois, sitting by designation.

pointed by the Secretary of Agriculture. 7 U.S.C. §6518(b), (c). The Board's principal task is advising the Secretary what belongs on the "National List of approved and prohibited substances that shall be included in the standards for organic production and handling" (7 U.S.C. §6517(a)). See 7 U.S.C. §6518(k)(2).

Dominic Marchese and Rebecca Goodman, who operate organic farms, have asked the Secretary to appoint them to the Board, but without success. In 2011, when Marchese applied, the Secretary appointed Carmela Beck instead; in 2014, when Goodman applied, the Secretary picked Ashley Swaffar. In this suit under the Administrative Procedure Act Marchese and Goodman, plus the Cornucopia Institute (an organic-farming group to which Marchese and Goodman belong), contend that Beck and Swaffar are ineligible to fill the seats to which they were appointed. Problem: throwing Beck and Swaffar off would not put Marchese or Goodman on. This led the district court to dismiss the suit for lack of standing. 260 F. Supp. 3d 1061 (W.D. Wis. 2017).

Beck and Swaffar were appointed to two of the four seats that §6518(b)(1) reserves for "individuals who own or operate an organic farming operation". When appointed, both Beck and Swaffar were employees of agribusinesses that produce some organic products and some non-organic products. It is not clear whether plaintiffs object to the fact that Beck and Swaffar were office employees rather than hands-on farm operators or entrepreneurs, or to the fact that their employers were not 100% dedicated to organic farming. The standing hurdle prevented the district court from pinning down plaintiffs' theory and from deciding whether Beck and Swaffar were qualified to serve.

To demonstrate standing a plaintiff must identify an injury caused by the complained-of conduct and redressable by a judicial decision. See, e.g., *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In the district court plaintiffs tried to show injury by contending that Beck and Swaffar don't have organic farmers' true interests at heart, which plaintiffs say is demonstrated by many votes they cast differently from the votes of the other members appointed to the seats reserved by §6518(b)(1). Plaintiffs insisted that by deflecting the Board from making recommendations most likely to promote organic farmers' interests, Beck and Swaffar have called the organic-farming industry into disrepute and reduced organic farmers' sales.

The district judge found that plaintiffs had not alleged that the Board's recommendations about what should be on or off the National List had any effect on the fortunes of organic farmers—and the judge added that this whole line of argument did not show any injury personal to the plaintiffs. If people are not buying or consuming the optimal amount of organic produce, that's a general, social injury, rather than the kind of person-specific loss needed to show standing. See, e.g., *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662–63 (2013); *Lance v. Coffman*, 549 U.S. 437, 439–42 (2007); *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 599 (2007); *United States v. Hays*, 515 U.S. 737, 744–45 (1995).

On appeal plaintiffs have abandoned this line of argument. Instead Marchese and Goodman contend that they suffered the personal loss of being denied a fair opportunity to compete for positions on the Board. Loss of a chance to obtain some benefit can indeed be an injury sufficient to

provide standing. *Northeastern Florida Chapter of the Associated General Contractors of America v. Jacksonville*, 508 U.S. 656, 664–66 (1993). It is therefore possible in principle for someone passed over for appointment to a position to complain that the decisionmaker used forbidden criteria. See *Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221 (10th Cir. 2004). But the other elements of standing—causation and redressability—still must be satisfied. See, e.g., *Bensman v. United States Forest Service*, 408 F.3d 945 (7th Cir. 2005), which holds that ability to show a procedural irregularity (which we assume Marchese and Goodman have done) does not establish standing unless a concrete loss has been caused by that irregularity and could be rectified by a judicial decision.

We bypass causation, which doesn't matter because the injury plaintiffs assert could not be redressed by a favorable decision. Marchese and Goodman contend that the appointments of Beck and Swaffar robbed them of their "right to be considered" for appointment. Yet they have no such right. The Secretary has a statutory right to appoint members of the Board but no corresponding duty to evaluate any particular applicant. Marchese and Goodman submitted their own names, but the Secretary was not obliged to consider them. Indeed, the Department of Agriculture was not obliged to open the envelopes. Section 6518(c) provides that the Secretary must choose from among "nominations received from organic certifying organizations, States, and other interested persons and organizations", but not that any of these nominations must be considered. And as almost everyone, including the staff of the Department of Agriculture's organic-farming bureau, is an "interested person" who can make a nomination, the Secretary may confine

attention to internally generated lists of candidates or those received from Senators and Representatives or supported by the editorial page of the *Washington Post*. This means that we could not redress the plaintiffs' grievance. We could not direct the Secretary to appoint them to the Board, to give them favorable (or any) attention, or even to put them in a pool from which a member would be drawn at random.

Many federal statutes limit the discretion of appointing officials. For example, the Federal Trade Commission has five members, of which "[n]ot more than three … shall be members of the same political party." 15 U.S.C. §41. When the FTC has three Republicans, any vacancy must be filled by a member of some other party or an independent. It is easy to imagine a contention that someone nominated as a Democrat is not a "real Democrat" despite being registered as one; indeed, such assertions have been made frequently over the decades. But a lifelong Democrat passed over for appointment could not litigate the question whether a person appointed by the President with the consent of the Senate is a "real Democrat," because the judiciary could not redress any injury by requiring the President to consider the plaintiff for a position on the Commission. Someone aggrieved by an order of an improperly constituted Commission has a bona fide complaint, see *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014), because the injury may be redressed by setting aside the Commission's order. But a person disappointed by being turned down for a post on the Commission must seek political rather than judicial remedies.

The Cornucopia Institute's standing derives from that of its members, and as the members lack standing so does the Institute.

What we have said so far resolves this appeal, and we need not consider the possibility that the case has become moot. Beck's term has expired, and she was ineligible for re-appointment. 7 U.S.C. §6518(d). Swaffar's term continues, though she has changed jobs and now operates her own organic farm. Plaintiffs say that this does not matter because she was ineligible in 2014, when she was appointed. We bypass that subject. There is no priority among reasons not to reach the merits of a lawsuit. See *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999). The absence of standing makes this suit non-justiciable; whether it would be non-justiciable for a further reason is unimportant.

AFFIRMED