Quist, District Judge, concurring in part and dissenting in part.
I agree with the majority opinion that Plaintiffs have satisfied standing at this stage of litigation on a district-by-district basis and that, in the same vein, the League of Women Voters of Michigan has derivative standing to challenge the districts in which its members reside. But I disagree with the majority opinion's rationale in the discussion section I.B.2. Specifically, in my view, no Plaintiff-not the League or any individually named Plaintiff-has properly supported standing for a statewide claim.
As the majority opinion explains, the individual Plaintiffs have brought forth sufficient evidence to show vote dilution at a district-level basis to support a claim under the Equal Protection Clause under Gill v. Whitford , --- U.S. ----, 138 S.Ct. 1916, 1930, 201 L.Ed.2d 313 (2018). Individual Plaintiffs rightly argue that the same evidence that supports their standing for an equal protection claim also supports a vote dilution claim under the First Amendment. Thus, individual Plaintiffs have alleged and supported only district-by-district standing. Accordingly, the League has derivative standing to challenge the reapportionment plan for any district in which its members reside and have put forth the requisite evidence.
However, a problem arises when the League claims standing independent from its members. To begin, the League conflates two distinct types of "associational" standing: (1) First Amendment associational standing, as outlined in Justice Kagan's concurrence in Gill , 138 S.Ct. at 1938 ; and (2) independent standing for an *810 organization or association , as outlined in Havens Realty Corp. v. Coleman , 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). For the reasons stated below, I do not believe the League has satisfied the requirements for either type of associational standing to be able to challenge the reapportionment plan on a statewide basis. For First Amendment associational standing, the League is not the right type of plaintiff; for independent standing for an organization or association, the League does not provide the right type of evidence.
First Amendment Associational Standing
The League cannot take advantage of First Amendment associational standing because it is not a political party or related entity. In her concurring opinion in Gill , Justice Kagan recognized an "associational harm of a partisan gerrymander [that] is distinct from vote dilution." 138 S.Ct. at 1938 (Kagan, J., concurring). Under such a theory, "the valued association and the injury to it are statewide [and] so too is the relevant standing requirement." Id. at 1939.
Even assuming that a majority of the Supreme Court would support Justice Kagan's concept of statewide First Amendment standing,[1] Justice Kagan herself narrowly defined the injury as the burden on "the ability of like-minded people across the State to affiliate in a political party and carry out that organization's activities and objects." Id. at 1939 (Kagan, J., concurring). See also id. at 1938 (Kagan, J., concurring) (stating that "the associational injury flowing from a statewide partisan gerrymander, whether alleged by a party member or the party itself , has nothing to do with the packing or cracking of any single district's lines") (emphasis added).
"Associational" standing in the terms of a burden on the First Amendment Freedom of Association in a partisan gerrymandering case is expressly limited to "parties, other political organizations, and their members." Id. at 1938 (Kagan, J., concurring). See also id. (noting that "what is true for party members may be doubly true for party officials and triply true for the party itself (or for related organizations )") (emphasis added); Vieth v. Jubelirer , 541 U.S. 267, 314, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004) (Kennedy, J., concurring) (stating that allegations of partisan gerrymandering "involve the First Amendment interest of not burdening or penalizing citizens because of their participation in the electoral process, their voting history, their association with a political party , or their expression of political views") (emphasis added); Benisek v. Lamone , No. 1:13-CV-03233-JKB, 348 F.Supp.3d 493, 522, 2018 WL 5816831, at *21 (D. Md. Nov. 7, 2018) (finding that "the associational injury is the burden imposed on the targeted party members' ability to affiliate with their political party to carry out its activities and achieve its aims") (emphasis added).[2]
*811 It makes sense to limit First Amendment associational standing in a partisan gerrymandering case to parties, political organizations, and their members based on the nature of the injury. The alleged gerrymander discriminated against voters on the basis of their association with a political party, not on the basis of their association with the League. In this case, the Republicans purportedly separated voters into districts based on their affinity for the Democratic party; there is no allegation that the mapmakers separated voters based on their membership in the League. Thus, because the League is not a political party (and is, in fact, avowedly nonpartisan),[3] it cannot rely on First Amendment associational standing to support a statewide claim.
Independent Standing for an Organization or Association
The League could also show statewide "associational" standing-more often referred to as organizational standing (i.e. independent standing for an association or organization)-if its mission has been "perceptibly impaired" by a "concrete and demonstrable injury to the organization's activities" and a "consequent drain on the organization's resources." Havens , 455 U.S. at 379, 102 S.Ct. 1114. However, the League relies on the wrong sort of evidence to support this type of standing.
The League relies on the declaration of Susan Smith (ECF No. 129-54) and the League's 30(b)(6) deposition (ECF No. 129-54) to support its independent organizational standing. The alleged harms to the League's mission-less participation in voter forums, unwillingness of Republican representatives to discuss proposals, and increased voter cynicism-are not sufficient to constitute an injury under Havens. The Havens Court required a showing of a "concrete and demonstrable injury to the organization's activities-with the consequent drain on the organization's resources-[that] constitutes far more than simply a setback to the organization's abstract social interests." 455 U.S. at 379, 102 S.Ct. 1114. But the League has not even alleged-much less supported-facts tending to show that it was required to expend time, money, or any other type of the organization's resources to fulfill its mission. The inability to entice candidates to participate in the League's activities and apathy among voters is what the Havens Court described as "simply a setback to the organization's abstract social interests." Id. Compare Crawford v. Marion Cnty. Election Bd. , 472 F.3d 949, 951 (7th Cir. 2007), aff'd , 553 U.S. 181, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (finding organizational standing when the Democratic Party was compelled "to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law"); Green Party of Tennessee v. Hargett , No. 2:13-CV-224, 2014 WL 11638572, at *10-11 (E.D. Tenn. Feb. 20, 2014) (concluding that the Green Party lacked organizational standing because "nowhere in plaintiff's complaint [was] it alleged that the challenged Tennessee statute w[ould] cause it to expend more of its time, money or resources, something it [needed to] do to plead an injury in fact").
As the dissent in Common Cause v. Rucho , 318 F.Supp.3d 777 (M.D.N.C. 2018) explained, to allow organizations to have First Amendment standing to assert partisan gerrymandering independent of its members based on "other organizational purposes" is tantamount to allowing the *812 organization to assert " 'only a generalized grievance against governmental conduct of which [it] does not approve.' " Id. at 951 (Osteen, J., concurring in part and dissenting in part) (quoting Gill , 138 S.Ct. at 1930 ). Gill reiterated that a "[a] federal court is not 'a forum for generalized grievances.' " Gill , 138 S.Ct. at 1929 (quoting Lance v. Coffman , 549 U.S. 437, 439, 127 S.Ct. 1194, 167 L.Ed.2d 29 (2007) ). Thus, allegations of impairment to the League's mission that do not comport with the injuries required for Havens standing are not sufficient to confer independent standing to the League.
In my view, because the individual Plaintiffs have alleged only vote dilution (district-level) claims and because the League cannot satisfy either type of independent standing, no Plaintiff can maintain a statewide claim.

After referencing Justice Kagan's concurrence, the majority opinion in Gill expressly limited the impact of Justice Kagan's conclusions in stating: "The reasoning of this Court with respect to the disposition of this case is set forth in this opinion and none other." Id. at 1931.

The district court in Common Cause v. Rucho , 318 F.Supp.3d 777, 830-31 (M.D.N.C. 2018), did find that the North Carolina League of Women Voters had associational standing to challenge the partisan gerrymander based on similar allegations to those advanced by the League in this case. However, I disagree with the rationale regarding the League's standing in Rucho for the reasons stated herein, and, moreover, "a decision of one District Court is not binding upon a different District Court." Grove Press, Inc. v. Blackwell , 308 F.Supp. 361, 374 (E.D. Mich. 1969).

League 30(b)(6) Dep., ECF No. 129-50 at PageID.4683 (stating, "When we say 'nonpartisan,' we mean that we do not support or oppose specific parties or candidates") (emphasis added).